**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CARMELO ANTONIO QUIJADA and ANDRES MOSQUERA MARTINEZ, individually and on behalf of others similarly situated,

Plaintiffs,

v.

GULFSTREAM CONTRACTORS, LLC d/b/a GULFSTREAM CONTRACTORS CONSTRUCTION & DEVELOPMENT, and MIKE MARSHALL a/k/a MIKE MARCHAL,

Defendants.

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY TRIAL DEMAND**

Plaintiffs Carmelo Antonio Quijada (hereinafter "Quijada") and Andres Mosquera Martinez (hereinafter "Martinez") (Quijada and Martinez collectively hereinafter referred to as "Plaintiffs"), individually and on behalf of the workers described below, by and through their attorneys, Sage Legal LLC, as and for their Class and Collective Action Complaint against Defendants Gulfstream Contractors, LLC, doing business as Gulfstream Contractors Construction & Development, and Mike Marshall, also known as Mike Marchal (collectively hereinafter referred to as "Defendants"), respectfully allege as follows:

## NATURE OF THE ACTION

1. Defendants engaged Plaintiffs to perform construction work in Florida for agreed daily wages.

2. Plaintiffs worked long days and weeks, but Quijada received payment for only his first two days and Martinez received no payment.

3. When they sought their earned wages, Mike Marshall refused payment and used threats involving firearms to discourage their demands.

4. Plaintiffs seek unpaid minimum wages and overtime compensation under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), relief for retaliation under federal and Florida law, and recovery of their agreed straight-time compensation under Florida contract law.

5. The federal wage claims are brought under 29 U.S.C. § 216(b), and the Florida contract claim is brought under Rule 23 of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule").

6. The retaliation claims are individual claims.

7. Plaintiffs assert claims for: (i) failure to pay the federal minimum wage under 29 U.S.C. §§ 206 and 216(b); (ii) failure to pay overtime compensation under 29 U.S.C. §§ 207 and 216(b); (iii) retaliation under 29 U.S.C. § 215(a)(3); (iv) retaliation under Article X, Section 24 of the Florida Constitution and Florida Statutes section 448.110(5); (v) breach of contract; (vi) *quantum meruit*, in the

alternative; (vii) unjust enrichment, in the alternative; (viii) retaliatory discharge under the Florida Private Whistleblower Act, Florida Statutes sections 448.101 through 448.105; and (ix) assault.

8. Defendants also ended Plaintiffs' employment on November 2, 2024, the same day Plaintiffs demanded their unpaid wages.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1337 and 29 U.S.C. § 216(b) because a federal question exists under the FLSA.

10. It has supplemental jurisdiction over the Florida claims under 28 U.S.C. § 1367 because those claims arise from a common nucleus of operative facts, namely the same employment, compensation arrangements, unpaid work, and responses to Plaintiffs' wage complaints.

11. Venue is proper under 28 U.S.C. § 1391(b)(2); on information and belief, a substantial part of the hiring, direction of Plaintiffs' construction work, and decisions to withhold the compensation at issue occurred in this District; Gulfstream operated through locations identified to Plaintiffs in Bradenton and Largo and used a Tampa business address at 2202 North Westshore Boulevard, Suite 200, Tampa, Florida 33607.

12. Assignment to the Tampa Division is appropriate under Middle District of Florida Local Rule 1.04 because the identified business and employment locations are in Hillsborough, Manatee, and Pinellas Counties, all within that Division.

13. Defendants purposefully conducted the Florida construction operations at issue, employed Plaintiffs in Florida, and directed the challenged compensation practices in Florida.

14. The claims arise from those activities, and the Court has personal jurisdiction over Defendants.

## PARTIES AND EMPLOYMENT RELATIONSHIP

15. Carmelo Antonio Quijada is an individual who resided in Boynton Beach, Florida, and worked for Defendants from approximately October 16 through November 2, 2024.

16. Andres Mosquera Martinez is an individual who resided in Tampa, Florida, and worked for Defendants from approximately October 23 through November 2, 2024.

17. Defendant Gulfstream Contractors, LLC, doing business as Gulfstream Contractors Construction & Development ("Gulfstream"), operated the Florida construction business that engaged Plaintiffs and received the benefit of their work.

18. Defendant Mike Marshall, also identified to Plaintiffs as Mike Marchal ("Marshall"), personally engaged Plaintiffs, agreed to their daily rates, and exercised

control over whether their wages would be paid; he communicated the refusals and threats described below while acting for Gulfstream.

19. Marshall hired Plaintiffs, set their daily rates of pay, and decided whether and when they would be paid.

20. Upon information and belief, Marshall directed and supervised Plaintiffs' daily construction work, including their work schedules and job assignments.

21. Marshall personally refused to pay Plaintiffs the wages they earned and personally responded to their wage complaints.

22. Upon information and belief, Marshall is an owner, member, manager, or officer of Gulfstream and exercises operational control over its day-to-day functions, including the compensation of its workers.

23. Gulfstream and Marshall each acted directly or indirectly in the interest of an employer in relation to Plaintiffs.

24. Marshall's actual control over hiring, compensation and payment made him an employer, not merely an individual bearing a corporate title.

25. Marshall is therefore an employer under 29 U.S.C. § 203(d), jointly and severally liable with Gulfstream for the FLSA violations alleged in this Complaint.

26. Each Defendant employed Plaintiffs within 29 U.S.C. § 203(d), (e) and (g).

27. Plaintiffs performed the construction labor Defendants engaged them to perform in exchange for daily compensation.

28. Their entitlement to payment depended on performing that labor, and Marshall controlled the payment decision.

29. The work was integral to Gulfstream's construction business.

30. Defendants' subsequent assertion that Plaintiffs were not formally hired did not alter the work they suffered or permitted Plaintiffs to perform.

31. Plaintiffs were engaged for construction work at daily rates.

32. They were nonexempt employees entitled to minimum wages and overtime.

33. No exemption under 29 U.S.C. § 213 applies to Plaintiffs.

34. Plaintiffs' work consisted primarily of manual construction labor, and the executive, administrative, and professional exemptions do not apply to construction workers and laborers who perform such work. See 29 C.F.R. § 541.3(a).

**FLSA COVERAGE**

35. Gulfstream's construction activities were related activities performed through unified operation or common control for a common business purpose within 29 U.S.C. § 203(r).

36. Marshall hired and dealt with multiple construction and cleaning workers in carrying out those activities.

37. On information and belief, during the relevant period Gulfstream had annual gross sales made or business done of at least $500,000.00.

38. On information and belief, employees in Gulfstream's construction operations handled or otherwise worked on tools, equipment and construction materials that had moved in interstate commerce; those items were used in Gulfstream's construction business.

39. Upon information and belief, Gulfstream had two or more employees, including Plaintiffs and the other construction and cleaning workers described in this Complaint, who handled or worked on such tools, equipment, and materials.

40. Together with its annual volume of business, this made Gulfstream an enterprise covered by 29 U.S.C. § 203(s)(1)(A).

**Quijada's Work and Unpaid Compensation**

41. On or about October 16, 2024, Marshall engaged Quijada for Gulfstream's construction work and agreed that Quijada would earn $350.00 for each day worked.

42. Quijada accepted that agreement and performed the requested work.

43. Quijada's customary schedule was Monday through Saturday, approximately 7:00 a.m. to 10:00 p.m., or approximately 15 hours per day and 90 hours in a full six-day workweek.

44. He worked that schedule during his employment, including approximately 90 hours during October 21-26, 2024, and approximately 90 hours during October 28-November 2, 2024.

45. Defendants paid Quijada for October 16 and 17, 2024, but did not pay the agreed daily compensation for the remaining work he performed through November 2, 2024.

46. In particular, he received no wages for the two full workweeks identified above.

47. Defendants did not pay him an overtime premium for his hours over forty.

48. Defendants paid Quijada nothing for at least fourteen (14) days of work at the agreed rate of $350.00 per day, leaving at least $4,900.00 in agreed wages unpaid.

49. On November 2, 2024, Quijada contacted Marshall and requested payment for the work he had performed.

50. He complained that his earned wages remained unpaid.

51. In the context of days and weeks of work for no pay, his complaint sought payment of wages that necessarily included his statutory minimum wages.

52. Marshall responded that he would pay nothing because Quijada and the other workers had not been legally hired.

53. In connection with Quijada's demand for payment, Marshall stated that he had three guns in his car.

54. Quijada understood the statement as a threat and feared for his safety.

55. Defendants terminated Quijada's employment on November 2, 2024, the same day he complained to Marshall about his unpaid wages.

**Martinez's Work and Unpaid Compensation**

56. On or about October 23, 2024, Marshall engaged Martinez for Gulfstream's construction work and agreed that Martinez would earn $250 for each day worked.

57. Martinez accepted that agreement and performed the requested work through approximately November 2, 2024.

58. Martinez's customary schedule was Monday through Saturday, approximately 8:00 a.m. to 7:00 p.m., or approximately 11 hours per day and 66 hours in a full six-day workweek.

59. For example, he worked approximately 66 hours during October 28-November 2, 2024.

60. Defendants paid Martinez nothing for his work, including no minimum wage for any hour worked and no overtime compensation for the hours he worked over forty in a workweek.

61. Martinez worked approximately ten (10) days at the agreed rate of $250.00 per day, so approximately $2,500.00 in agreed wages remains unpaid.

62. At the end of this employment, Martinez complained directly to Marshall that he had not received his earned wages and sought payment.

63. His complaint concerned complete nonpayment for the construction labor he had performed, including the workweek exceeding forty hours described above.

64. In response to Martinez's wage complaint, Marshall threatened Martinez with a weapon and asserted that Martinez could not prove that he worked for Marshall because the employment was not official.

65. The threat intimidated Martinez and made him fear the consequences of continuing to demand his wages.

66. Defendants terminated Martinez's employment on or about November 2, 2024, when he complained to Marshall about his unpaid wages.

**Common Compensation Practices and Willfulness**

67. Both Plaintiffs were engaged through Marshall, promised a flat daily rate for construction work, required to work schedules exceeding forty hours in full workweeks, and denied the wages they earned.

68. They identify other workers who performed construction or post-construction cleaning for the same business under daily-rate arrangements and also complained of unpaid wages.

69. The nonpayment was deliberate.

70. Marshall did not identify a timekeeping error or a disputed calculation when Quijada requested payment; he categorically refused to pay and relied on the absence of formal hiring.

71. Marshall also invoked a weapon or guns when Plaintiffs demanded payment.

72. These facts support the inference that Defendants knew, or recklessly disregarded, that withholding all compensation and failing to pay overtime violated wage law.

73. Defendants' refusal to pay any wages for work they requested and accepted, and their response of threats rather than payment, shows that they knew or showed reckless disregard for whether their conduct violated the FLSA.

74. Defendants did not act in good faith or with reasonable grounds for believing that their failure to pay minimum wages and overtime complied with the FLSA, within the meaning of 29 U.S.C. § 260.

75. Defendants possessed or controlled information about the work assigned, the rates agreed, and any payments made.

76. Upon information and belief, Defendants failed to make, keep, and preserve accurate records of Plaintiffs' hours worked and wages paid, as 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2 require.

77. Plaintiffs' hours are good-faith estimates based on their schedules and recollections and will be refined with available records and testimony.

78. Because Defendants did not keep accurate records, Plaintiffs may prove the amount and extent of their uncompensated work as a matter of just and reasonable inference.

**FLSA Collective Allegations**

79. Under 29 U.S.C. § 216(b), Plaintiffs bring Counts One and Two on behalf of themselves and similarly situated persons who consent in writing to join: all persons employed by Defendants in Florida to perform nonexempt construction or post-construction cleaning work under flat daily-rate arrangements during the three years preceding the filing of this action through the filing date, who were not

paid the applicable minimum wage or overtime compensation for hours over forty in a workweek.

80. The proposed members are similarly situated with respect to the challenged daily-rate payment practices, Marshall's role in compensation, and the refusal to pay for completed work.

81. Differences in daily rates, workdays and hours can be addressed through individual calculations and, if appropriate, separate minimum-wage and overtime groups.

82. Plaintiffs request discovery concerning the affected workers and pay practices and, upon the required showing, Court-authorized notice and an opportunity for similarly situated employees to opt in.

**Florida Class Allegations**

83. Plaintiffs bring Count Five under Rule 23(a) and (b)(3) for the following proposed Florida class: all persons whom Gulfstream engaged in Florida to perform construction or post-construction cleaning work in exchange for an agreed flat daily rate, and whose agreed compensation for completed work became due but was not paid in full during the three years preceding the filing of this action through the filing date.

84. Excluded are Defendants and their owners and officers.

85. Plaintiffs request certification of this class only upon proof of the requirements of Rule 23.

86. Upon information and belief, the proposed Class consists of numerous current and former employees who performed construction and post-construction cleaning work for Defendants in Florida and were not paid their agreed compensation for work performed.

87. The exact number of Class members is presently unknown to Plaintiffs but can be determined through Defendants' employment, payroll, and other business records.

88. Plaintiffs are aware of other workers who performed services for Defendants under similar compensation arrangements and were not paid their earned wages.

89. Upon information and belief, the Class members are geographically dispersed throughout Florida, and many have relatively small individual claims, making individual joinder impracticable.

90. Accordingly, the Class is sufficiently numerous that joinder of all members is impracticable within the meaning of Rule 23(a)(1).

91. Common questions include whether Gulfstream, acting through Marshall, promised daily compensation for the class members' labor; whether it followed a common decision or practice of refusing payment after the work was

performed; and whether its asserted lack of formal hiring relieved it of the obligation to pay the agreed compensation.

92. Plaintiffs' claims are typical because they performed construction work under daily-rate agreements made through Marshall and were denied the agreed pay under the same asserted refusal to recognize the employment.

93. Their claims and the class claims arise from the same alleged compensation practice and Florida contract principles.

94. Plaintiffs seek the same recovery of agreed wages as the class, have no known interests antagonistic to it, and will fairly and adequately protect its interests with counsel qualified to litigate employment and representative actions.

95. The alleged common source of the daily-rate promises and the common refusal to pay for completed work present issues capable of common proof.

96. Individual daily rates, days worked and credits can be applied in calculating each worker's unpaid agreed compensation.

97. Plaintiffs seek certification only of claims and issues for which common questions predominate over individual ones.

98. A class proceeding would permit common issues concerning Gulfstream's compensation practice to be resolved together and would avoid repeatedly litigating the same payment defense.

99. Subject to proof of numerosity and manageability, the workers' relatively modest individual wage claims and the alleged threats connected with wage demands favor a common proceeding.

100. Plaintiffs request any necessary subclasses or adjustment of the definition supported by discovery.

## CAUSES OF ACTION

### COUNT ONE
**Failure to pay the federal minimum wage**
**(29 U.S.C. §§ 206 and 216(b))**
**(Against Gulfstream and Marshall on behalf of Quijada, Martinez, and the FLSA collective)**

101. Gulfstream employed Quijada to perform construction labor in Florida from approximately October 16, 2024 through November 2, 2024.

102. Gulfstream employed Martinez to perform construction labor in Florida from approximately October 23, 2024 through November 2, 2024.

103. Marshall personally hired Quijada and Martinez, set their daily rates of pay, and decided whether and when they would be paid.

104. Upon information and belief, Marshall also directed and supervised the daily construction work of Quijada and Martinez, including their work schedules and job assignments.

105. Gulfstream was the employer of Quijada and Martinez under 29 U.S.C. § 203(d) because it engaged them through Marshall for its construction business and received the benefit of their labor.

106. Marshall was also the employer of Quijada and Martinez under 29 U.S.C. § 203(d) because he acted directly in the interest of Gulfstream in relation to them and exercised control over their hiring, pay, and payment.

107. Upon information and belief, during 2024 Gulfstream had annual gross volume of sales made or business done of not less than $500,000.00.

108. Upon information and belief, Gulfstream had two or more employees, including Quijada and Martinez, who handled or otherwise worked on tools, equipment, and construction materials that had moved in interstate commerce and were used in Gulfstream's construction business.

109. Gulfstream was therefore an enterprise engaged in commerce under 29 U.S.C. § 203(s)(1)(A), and Quijada and Martinez were employed in that enterprise.

110. Quijada and Martinez performed manual construction labor and were not exempt from the minimum wage requirements of 29 U.S.C. § 206 under any provision of 29 U.S.C. § 213.

111. Section 206(a)(1)(C) of Title 29 required Gulfstream and Marshall to pay Quijada and Martinez at least $7.25 for each hour worked in each workweek.

112. Quijada worked approximately ninety (90) hours during the workweek of October 21-26, 2024, and approximately ninety (90) hours during the workweek of October 28-November 2, 2024.

113. Gulfstream and Marshall paid Quijada no wages for either of those workweeks.

114. Martinez worked approximately eleven (11) hours per day, Monday through Saturday, from October 23, 2024 through November 2, 2024, including approximately sixty-six (66) hours during the workweek of October 28-November 2, 2024.

115. Gulfstream and Marshall paid Martinez no wages for any hour he worked.

116. Gulfstream violated 29 U.S.C. § 206 by paying Quijada and Martinez nothing for those workweeks.

117. Marshall violated 29 U.S.C. § 206 by personally refusing to pay Quijada and Martinez any wages for those workweeks.

118. When Quijada asked for his wages, Marshall did not identify any timekeeping error or disputed calculation, but instead refused to pay anything because Quijada and the other workers had not been legally hired.

119. Gulfstream and Marshall therefore knew, or showed reckless disregard for whether, withholding all wages for completed work violated the FLSA, so the three-year limitations period in 29 U.S.C. § 255(a) applies.

120. Gulfstream and Marshall did not act in good faith or with reasonable grounds for believing that their failure to pay complied with the FLSA, within the meaning of 29 U.S.C. § 260.

121. Upon information and belief, Gulfstream and Marshall likewise failed to pay the federal minimum wage to other persons whom they employed in Florida to perform nonexempt construction or post-construction cleaning work under flat daily-rate arrangements and whose wages for completed work were withheld.

122. Gulfstream and Marshall are jointly and severally liable to Quijada, Martinez, and each employee who files a written consent to join this action for the unpaid minimum wages, an equal amount as liquidated damages, and reasonable attorney's fees and costs under 29 U.S.C. § 216(b).

**COUNT TWO**
**Failure to pay overtime compensation**
**(29 U.S.C. §§ 207 and 216(b))**
**(Against Gulfstream and Marshall on behalf of Quijada, Martinez, and the FLSA collective)**

123. Gulfstream employed Quijada to perform construction labor in Florida from approximately October 16, 2024 through November 2, 2024.

124. Gulfstream employed Martinez to perform construction labor in Florida from approximately October 23, 2024 through November 2, 2024.

125. Marshall personally hired Quijada and Martinez, set their daily rates of pay, and decided whether and when they would be paid.

126. Upon information and belief, Marshall also directed and supervised the daily construction work of Quijada and Martinez, including their work schedules and job assignments.

127. Gulfstream was the employer of Quijada and Martinez under 29 U.S.C. § 203(d) because it engaged them through Marshall for its construction business and received the benefit of their labor.

128. Marshall was also the employer of Quijada and Martinez under 29 U.S.C. § 203(d) because he acted directly in the interest of Gulfstream in relation to them and exercised control over their hiring, pay, and payment.

129. Upon information and belief, during 2024 Gulfstream had annual gross volume of sales made or business done of not less than $500,000.00.

130. Upon information and belief, Gulfstream had two or more employees, including Quijada and Martinez, who handled or otherwise worked on tools, equipment, and construction materials that had moved in interstate commerce and were used in Gulfstream's construction business.

131. Gulfstream was therefore an enterprise engaged in commerce under 29 U.S.C. § 203(s)(1)(A), and Quijada and Martinez were employed in that enterprise.

132. Quijada and Martinez performed manual construction labor and were not exempt from the overtime requirements of 29 U.S.C. § 207 under any provision of 29 U.S.C. § 213.

133. The executive, administrative, and professional exemptions do not apply to construction workers and laborers who perform manual work. See 29 C.F.R. § 541.3(a).

134. Section 207(a)(1) of Title 29 required Gulfstream and Marshall to pay Quijada and Martinez at least one and one-half times their regular rates for each hour worked over forty (40) in a workweek.

135. Quijada worked approximately ninety (90) hours during the workweek of October 21-26, 2024, and approximately ninety (90) hours during the workweek of October 28-November 2, 2024.

136. Quijada therefore worked approximately fifty (50) overtime hours in each of those two workweeks.

137. Martinez worked approximately eleven (11) hours per day, Monday through Saturday, from October 23, 2024 through November 2, 2024, including approximately sixty-six (66) hours during the workweek of October 28-November 2, 2024.

138. Martinez therefore worked approximately twenty-six (26) overtime hours during the workweek of October 28-November 2, 2024.

139. Gulfstream and Marshall paid Quijada and Martinez no overtime compensation for any of those hours.

140. The regular rate for each workweek must be determined from the agreed daily rate and the hours actually worked, as 29 C.F.R. § 778.112 provides.

141. Because Gulfstream and Marshall paid none of the straight-time compensation due for those workweeks, no part of the daily rate can be credited toward the overtime compensation owed. See 29 C.F.R. § 778.315.

142. Gulfstream violated 29 U.S.C. § 207 by failing to pay Quijada and Martinez overtime compensation for those hours.

143. Marshall violated 29 U.S.C. § 207 by personally refusing to pay Quijada and Martinez any compensation for those hours.

144. When Quijada asked for his wages, Marshall did not identify any timekeeping error or disputed calculation, but instead refused to pay anything because Quijada and the other workers had not been legally hired.

145. Gulfstream and Marshall therefore knew, or showed reckless disregard for whether, withholding all wages for completed work violated the FLSA, so the three-year limitations period in 29 U.S.C. § 255(a) applies.

146. Gulfstream and Marshall did not act in good faith or with reasonable grounds for believing that their failure to pay complied with the FLSA, within the meaning of 29 U.S.C. § 260.

147. Upon information and belief, Gulfstream and Marshall likewise failed to pay overtime compensation to other persons whom they employed in Florida to perform nonexempt construction or post-construction cleaning work under flat daily-rate arrangements for more than forty (40) hours in a workweek.

148. Gulfstream and Marshall are jointly and severally liable to Quijada, Martinez, and each employee who files a written consent to join this action for the unpaid overtime compensation, an equal amount as liquidated damages, and reasonable attorney's fees and costs under 29 U.S.C. § 216(b).

**COUNT THREE**
**Retaliation for wage complaints**
**(29 U.S.C. §§ 215(a)(3) and 216(b))**
**(Against Gulfstream and Marshall on behalf of Quijada and Martinez individually)**

149. Gulfstream employed Quijada to perform construction labor in Florida from approximately October 16, 2024 through November 2, 2024.

150. Gulfstream employed Martinez to perform construction labor in Florida from approximately October 23, 2024 through November 2, 2024.

151. Marshall personally hired Quijada and Martinez, set their daily rates of pay, and decided whether and when they would be paid.

152. Section 215(a)(3) of Title 29 prohibits any person from discharging or in any other manner discriminating against an employee because the employee has filed any complaint under or related to the FLSA.

153. Gulfstream paid Quijada only for October 16 and 17, 2024, and paid Martinez nothing, for the construction labor they performed.

154. On November 2, 2024, Quijada contacted Marshall, complained that his earned wages remained unpaid, and requested payment for the work he had performed.

155. At the end of his employment, Martinez complained directly to Marshall that he had not received his earned wages and sought payment.

156. Each complaint concerned the complete nonpayment of wages for workweeks in which the complaining Plaintiff had worked more than forty (40) hours.

157. In that context, each complaint gave Gulfstream and Marshall fair notice that the complaining Plaintiff was asserting his right to be paid the minimum wage and overtime compensation that the FLSA protects.

158. The oral complaints of Quijada and Martinez to Marshall were protected activity under 29 U.S.C. § 215(a)(3).

159. Marshall responded to Quijada's complaint by refusing to pay anything and by stating that he had three guns in his car.

160. Quijada understood Marshall's statement as a threat and feared for his safety.

161. Marshall responded to Martinez's complaint by threatening Martinez with a weapon and asserting that Martinez could not prove he worked for Marshall because the employment was not official.

162. Marshall's threat intimidated Martinez and made him fear the consequences of continuing to demand his wages.

163. Upon information and belief, Marshall, acting for Gulfstream, terminated Quijada's employment on November 2, 2024, the same day Quijada complained about his unpaid wages.

164. Upon information and belief, Marshall, acting for Gulfstream, terminated Martinez's employment on or about November 2, 2024, when Martinez complained about his unpaid wages.

165. Threatening a worker with a weapon and terminating his employment because he seeks his earned pay are materially adverse actions that would dissuade a reasonable worker from complaining about unpaid wages.

166. The threats and terminations occurred on the same day as, and in direct response to, the wage complaints, which shows that the complaints caused them.

167. Marshall is personally liable under 29 U.S.C. § 215(a)(3) because he made the threats and carried out the terminations.

168. Gulfstream is liable under 29 U.S.C. § 215(a)(3) because Marshall made the threats and carried out the terminations while acting for Gulfstream in responding to wage demands for work performed for Gulfstream.

169. Quijada and Martinez each seek, under 29 U.S.C. § 216(b), the wages lost because of his termination, an additional equal amount as liquidated damages, compensation for the emotional distress and other harm proved, and reasonable attorney's fees and costs.

**COUNT FOUR**
**Retaliation for asserting Florida minimum wage rights**
**(Florida Constitution article X section 24 and Florida Statutes section 448.110)**
**(Against Gulfstream and Marshall on behalf of Quijada and Martinez individually)**

170. Gulfstream employed Quijada to perform construction labor in Florida from approximately October 16, 2024 through November 2, 2024.

171. Gulfstream employed Martinez to perform construction labor in Florida from approximately October 23, 2024 through November 2, 2024.

172. Marshall personally hired Quijada and Martinez, set their daily rates of pay, and decided whether and when they would be paid.

173. The Florida minimum wage was $13.00 per hour during the employment of Quijada and Martinez in October and November 2024.

174. Gulfstream and Marshall paid Quijada nothing for his work after October 17, 2024, and paid Martinez nothing for any of his work, so each received less than the Florida minimum wage for the hours he worked.

175. On November 2, 2024, Quijada contacted Marshall, complained that his earned wages remained unpaid, and requested payment for the work he had performed.

176. At the end of his employment, Martinez complained directly to Marshall that he had not received his earned wages and sought payment.

177. Those complaints asserted rights that included the right of Quijada and Martinez to receive the Florida minimum wage.

178. Article X, Section 24(d) of the Florida Constitution and Florida Statutes section 448.110(5) prohibit retaliation against any employee for exercising rights protected under those provisions.

179. Marshall responded to Quijada's complaint by refusing to pay anything and by stating that he had three guns in his car.

180. Quijada understood Marshall's statement as a threat and feared for his safety.

181. Marshall responded to Martinez's complaint by threatening Martinez with a weapon and asserting that Martinez could not prove he worked for Marshall because the employment was not official.

182. Marshall's threat intimidated Martinez and made him fear the consequences of continuing to demand his wages.

183. Upon information and belief, Marshall, acting for Gulfstream, terminated Quijada's employment on November 2, 2024, the same day Quijada complained about his unpaid wages.

184. Upon information and belief, Marshall, acting for Gulfstream, terminated Martinez's employment on or about November 2, 2024, when Martinez complained about his unpaid wages.

185. Marshall violated those provisions personally by making the threats and carrying out the terminations in response to the wage complaints.

186. Gulfstream violated those provisions because Marshall made the threats and carried out the terminations while acting for Gulfstream.

187. Florida Statutes section 448.110(6)(a) authorizes any person aggrieved by a violation of section 448.110 to bring a civil action against a party that violates subsection (5), and its pre-suit notice requirement applies only to a claim for unpaid minimum wages.

188. Quijada and Martinez each seek compensatory damages for the retaliation injuries proved to the extent authorized by Florida Statutes section 448.110(6)(c), together with reasonable attorney's fees and costs and the other relief that provision permits.

189. This count seeks relief for retaliation, not an award of unpaid Florida minimum wages, and does not seek punitive damages.

**COUNT FIVE**
**Breach of oral agreements to pay daily wages**
**(Florida law)**
**(Against Gulfstream on behalf of Quijada, Martinez, and the Florida class)**

190. On or about October 16, 2024, Marshall, acting for Gulfstream, orally agreed to pay Quijada $350.00 for each day of construction work he performed.

191. Quijada accepted that offer by agreeing to work and by performing the requested labor.

192. On or about October 23, 2024, Marshall, acting for Gulfstream, orally agreed to pay Martinez $250.00 for each day of construction work he performed.

193. Martinez accepted that offer by agreeing to work and by performing the requested labor.

194. Marshall made those agreements with actual or apparent authority to hire workers and set their pay for Gulfstream's construction work.

195. The daily compensation and the labor were the consideration exchanged, and each agreement required Gulfstream to pay the agreed rate for each completed workday.

196. Quijada performed construction labor for Gulfstream on approximately sixteen (16) workdays from October 16, 2024 through November 2, 2024.

197. Martinez performed construction labor for Gulfstream on approximately ten (10) workdays from October 23, 2024 through November 2, 2024.

198. Gulfstream paid Quijada for October 16 and 17, 2024, but paid him nothing for at least fourteen (14) additional workdays.

199. Gulfstream paid Martinez nothing for any workday.

200. The agreed compensation became due and remains unpaid.

201. Gulfstream materially breached its agreement with each Plaintiff by refusing to pay the agreed compensation for completed work.

202. As a direct and proximate result of that breach, Quijada has been damaged in the amount of at least $4,900.00, less any lawful credits.

203. As a direct and proximate result of that breach, Martinez has been damaged in the amount of approximately $2,500.00, less any lawful credits.

204. Upon information and belief, Gulfstream, acting through Marshall, made the same type of daily-rate agreements with the members of the Florida class and breached them by withholding the agreed compensation for completed work.

205. Each class member's damages equal the agreed daily compensation earned, less amounts actually paid and credits for overlapping recoveries.

206. Quijada, Martinez, and the Florida class seek their unpaid agreed wages, prejudgment interest from the dates the wages became due, costs, and attorney's fees under Florida Statutes section 448.08.

**COUNT SIX**
**Quantum meruit in the alternative**
**(Florida law)**
**(Against Gulfstream on behalf of Quijada and Martinez individually)**

207. Under Rule 8(d)(2), this count is pleaded in the alternative, in the event the Court finds that no enforceable express agreement governs the services of Quijada and Martinez.

208. Beginning on or about October 16, 2024, Marshall, acting for Gulfstream, requested that Quijada perform construction labor for Gulfstream's business.

209. Beginning on or about October 23, 2024, Marshall, acting for Gulfstream, requested that Martinez perform construction labor for Gulfstream's business.

210. Quijada performed construction labor for Gulfstream on approximately sixteen (16) workdays from October 16, 2024 through November 2, 2024.

211. Martinez performed construction labor for Gulfstream on approximately ten (10) workdays from October 23, 2024 through November 2, 2024.

212. Gulfstream knowingly accepted those services.

213. Quijada and Martinez performed the services with the expectation of payment, which Marshall's statement of daily rates confirmed, and not as a gift.

214. Gulfstream did not pay for those services, except for Quijada's first two days of work.

215. Quijada and Martinez each seek the unpaid reasonable value of his services, with the stated daily rates as evidence of that value.

216. Quijada and Martinez also seek prejudgment interest, costs, and attorney's fees to the extent authorized by Florida Statutes section 448.08.

**COUNT SEVEN**
**Unjust enrichment in the alternative**
**(Florida law)**
**(Against Gulfstream on behalf of Quijada and Martinez individually)**

217. Under Rule 8(d)(2), this count is pleaded in the alternative, in the event the Court finds that no express or implied-in-fact contract governs the services of Quijada and Martinez.

218. Quijada performed construction labor for Gulfstream on approximately sixteen (16) workdays from October 16, 2024 through November 2, 2024.

219. Martinez performed construction labor for Gulfstream on approximately ten (10) workdays from October 23, 2024 through November 2, 2024.

220. Quijada and Martinez conferred a benefit on Gulfstream by performing that labor for its construction business.

221. Gulfstream knew of that benefit because Marshall, acting for Gulfstream, requested the labor and Gulfstream received its results.

222. Gulfstream voluntarily accepted and retained the benefit of that labor without paying for it, except for Quijada's first two days of work.

223. Under these circumstances, it would be inequitable for Gulfstream to retain the benefit of that labor without paying its fair value.

224. Quijada and Martinez each seek the fair value of his labor, which is at least the stated daily rate.

**COUNT EIGHT**
**Retaliatory discharge**
**(Florida Private Whistleblower Act, Florida Statutes sections 448.102(3) and 448.103)**
**(Against Gulfstream on behalf of Quijada and Martinez individually)**

225. Upon information and belief, Gulfstream is an "employer" under Florida Statutes section 448.101(3) because it employed ten (10) or more persons at all relevant times.

226. Gulfstream employed Quijada to perform construction labor in Florida from approximately October 16, 2024 through November 2, 2024.

227. Gulfstream employed Martinez to perform construction labor in Florida from approximately October 23, 2024 through November 2, 2024.

228. Quijada and Martinez were "employees" under Florida Statutes section 448.101(2) because they performed services for Gulfstream, under the control and direction of Gulfstream through Marshall, for wages.

229. Quijada worked approximately ninety (90) hours during the workweek of October 21-26, 2024, and approximately ninety (90) hours during the workweek of October 28-November 2, 2024.

230. Gulfstream paid Quijada no wages for either of those workweeks.

231. Martinez worked approximately eleven (11) hours per day, Monday through Saturday, from October 23, 2024 through November 2, 2024, including approximately sixty-six (66) hours during the workweek of October 28-November 2, 2024.

232. Gulfstream paid Martinez no wages for any hour he worked.

233. By paying nothing for those workweeks, Gulfstream violated the minimum wage and overtime requirements of 29 U.S.C. §§ 206 and 207 and Article X, Section 24 of the Florida Constitution, each of which is a law, rule, or regulation applicable to Gulfstream and pertaining to its business, within Florida Statutes section 448.101(4).

234. On November 2, 2024, Quijada objected to that practice by complaining to Marshall that his earned wages remained unpaid.

235. At the end of his employment, Martinez objected to that practice by complaining to Marshall that he had not received his earned wages.

236. Marshall hired Quijada and Martinez for Gulfstream and controlled their pay, so their objections to Marshall were objections to Gulfstream.

237. Upon information and belief, Marshall, acting for Gulfstream, terminated Quijada's employment on November 2, 2024, the same day Quijada complained about his unpaid wages.

238. Upon information and belief, Marshall, acting for Gulfstream, terminated Martinez's employment on or about November 2, 2024, when Martinez complained about his unpaid wages.

239. Each termination was a retaliatory personnel action under Florida Statutes section 448.101(5), taken because of the objecting Plaintiff's objection, in violation of section 448.102(3).

240. Section 448.102(3) does not require an employee to give the employer written notice before objecting to a violation, and Quijada and Martinez commenced this action within two (2) years after discovering their discharges, as section 448.103(1)(a) requires.

241. Quijada and Martinez each seek compensation for lost wages, benefits, and other remuneration, any other compensatory damages allowable at law, and the other relief authorized by Florida Statutes section 448.103(2), together with reasonable attorney's fees, court costs, and expenses under section 448.104.

**COUNT NINE**
**Assault**
**(Florida law)**
**(Against Marshall and Gulfstream on behalf of Martinez individually)**

242. At the end of his employment, Martinez complained directly to Marshall that he had not received his earned wages and sought payment.

243. In response to that complaint, Marshall intentionally and unlawfully threatened Martinez with a weapon.

244. Marshall had the apparent present ability to carry out the threat because he made it with a weapon.

245. Marshall's threat created in Martinez a well-founded fear that violence was imminent.

246. Marshall is personally liable to Martinez for the assault because he made the threat.

247. Gulfstream is vicariously liable to Martinez for the assault because Marshall made the threat while acting within the course and scope of his role for Gulfstream, in response to a demand for wages that Gulfstream owed.

248. As a direct and proximate result of the assault, Martinez suffered fear, intimidation, and emotional distress, in an amount to be determined at trial.

249. Because Marshall's conduct was intentional, Martinez also seeks punitive damages against Marshall.

## PRAYER FOR RELIEF

Plaintiffs request judgment as follows:

A. Permit Counts One and Two to proceed as an FLSA collective action upon the required showing, authorize appropriate notice, and adjudicate the claims of employees who file written consents;

B. Upon proof of Rule 23, certify the Florida class for Count Five, appoint Plaintiffs as class representatives and qualified counsel as class counsel, and direct appropriate notice;

C. Award unpaid federal minimum wages and overtime, with statutory liquidated damages where authorized, against the Defendants jointly and severally to the extent each is liable as an employer;

D. Award unpaid agreed compensation against Gulfstream under Count Five, or the appropriate alternative recovery under Count Six or Count Seven;

E. Award the named Plaintiffs compensation for the retaliation injuries proved under Counts Three, Four, and Eight, including lost wages and an additional equal amount as liquidated damages under 29 U.S.C. § 216(b);

F. Award Martinez compensatory damages against Defendants and punitive damages against Marshall under Count Nine, in an amount to be determined at trial;

G. Award reasonable attorney's fees and costs under 29 U.S.C. § 216(b) and Florida Statutes sections 448.08, 448.104, and 448.110(6)(c); prejudgment interest where legally available; and post-judgment interest under 28 U.S.C. § 1961; and

H. Grant such other and further relief as this Court deems just, equitable, and proper.

**JURY DEMAND**

Pursuant to Rule 38(b), Plaintiffs demand a trial by jury on all issues so triable.

Dated: Jamaica, New York
November 2, 2026

Respectfully submitted,

David Pinkhasov, FL # 1040933
CONSUMER ATTORNEYS PLLC
6829 Main Street
Flushing, NY 11367-1305
T: (718) 701-4605
F: (718) 247-8020
E: dpinkhasov@consumerattorneys.com

**SAGE LEGAL LLC**

By: *<u>/s/ Emanuel Kataev, Esq.</u>*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc
*Motion for admission pro hac vice forthcoming*

*Attorneys for Plaintiffs*
*Carmelo Antonio Quijada, and*
*Andres Mosquera Martinez*